Nos. 2015-1422, 15-1821

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

JOSEPH NEEV,

*Petitioner-Appellant,*

v.

ALCON LENSX, INC.,

*Respondent-Appellee.*

Appeal from the United States District Court for the Central District of California, case no. 8:14-cv-00660-GHK-JEM, Judge George H. King

## BRIEF FOR RESPONDENT-APPELLEE ALCON LENSX, INC.

ERIC M. ACKER
MARY PRENDERGAST
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, CA  92130
Telephone:  858.720.5100
EAcker@mofo.com

BRIAN R. MATSUI
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:  202.887.8784
BMatsui@mofo.com

*Counsel for Respondent-Appellee Alcon LenSx, Inc.*

NOVEMBER 23, 2015

# CERTIFICATE OF INTEREST

Counsel for respondent-appellee Alcon LenSx, Inc. certifies the following:

1.    The full name of every party or amicus represented by me is:

Alcon LenSx, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.    All parent corporations and any publicly held companies that own 10% or more of the stock of the party or amicus curiae represented by me are:

Alcon LenSx, Inc. is a direct, wholly-owned subsidiary of Alcon Laboratories, Inc., which is an indirect, wholly-owned subsidiary of Novartis AG.  Novartis AG's shares are listed and traded on the SIX Swiss Exchange as well as on the NYSE in the form of American Depositary Receipts representing Novartis American Depositary Shares.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or are expected to appear in this court are:

Morrison & Foerster LLP:  Eric M. Acker, Brian R. Matsui, Mary Prendergast

Dated:  November 23, 2015                    _____/s/ Brian R. Matsui_____

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................ i

TABLE OF AUTHORITIES .................................................................. iv

STATEMENT OF RELATED CASES ............................................... viii

STATEMENT OF THE ISSUES...................................................................1

INTRODUCTION ......................................................................................1

STATEMENT OF THE CASE...................................................................4

    A.    Drs. Ron Kurtz And Tibor Juhasz Pioneered The Use Of Femtosecond Lasers Used In The LenSx Laser System For Both LASIK and Cataract Surgery .......................................................4

    B.    LenSx Licensed The '199 Patent For A Possible Future Glaucoma Application..........................................................................6

    C.    The Arbitrator Construed The Claims, Found Noninfringement, And Awarded Costs Based On Both Parties' Requests For Costs ......................................................................................................8

    D.    The District Court Confirmed The Award In Full ..............................14

    E.    The District Court Found Dr. Neev's Request For An Indicative Ruling Of Evident Partiality "Clearly Unwarranted" .........................17

SUMMARY OF ARGUMENT ................................................................20

STANDARD OF REVIEW ......................................................................21

ARGUMENT .............................................................................................23

I.    DR. NEEV CANNOT DEMONSTRATE THAT THE ARBITRATOR MANIFESTLY DISREGARDED THE LAW IN FINDING NONINFRINGEMENT ................................................................23

    A.    Judicial Review Of Arbitration Awards Under The FAA Is Both Limited And Highly Deferential ................................................23

B.     The Arbitrator Did Not Manifestly Disregard The Law In Finding Noninfringement Of Claim 5 ................................................. 30

     1.     The Arbitrator correctly stated this Court's claim construction principles and did not ignore them ...................... 30

     2.     The Arbitrator correctly stated this Court's law with regard to infringement and did not ignore it ............................ 36

     3.     Dr. Neev's fact-based arguments ignore the highly limited and deferential review under the FAA ........................ 38

II.     THE ARBITRATOR DID NOT EXCEED HIS POWERS WHEN HE AWARDED COSTS TO LENSX .................................................. 41

III.     THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN FINDING THAT THERE WAS NO EVIDENCE THAT CREATES A REASONABLE IMPRESSION OF BIAS ................................................ 43

A.     Dr. Neev Failed To Present Any Credible Evidence Of An Actual Connection Between The Arbitrator And Fish & Richardson ......................................................................................... 45

B.     Dr. Neev Also Failed To Present Any Evidence Of A Relevant Relationship Between LenSx And Fish & Richardson ...................... 47

C.     Even If There Were A Connection Between LenSx, Fish & Richardson, And The Arbitrator, It Fails To Establish A "Reasonable Impression of Bias" ....................................................... 47

CONCLUSION ................................................................................................. 49

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*A.G. Edwards & Sons, Inc. v. McCollough,*
967 F.2d 1401 (9th Cir. 1992) ............................................................................40

*Am. Postal Workers Union AFL-CIO v. U.S. Postal Service,*
682 F.2d 1280 (9th Cir. 1982) ......................................................28, 29, 35, 38

*Amana Refrigeration, Inc. v. Quadlux, Inc.,*
172 F.3d 852 (Fed. Cir. 1999) ..........................................................................23

*Biller v. Toyota Motor Corp.,*
668 F.3d 655 (9th Cir. 2012) ........................................ 2, 23, 24, 25, 26, 39, 40

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,*
289 F.3d 801 (Fed. Cir. 2002) ..........................................................................39

*Caterpillar Inc. v. Sturman Indus., Inc.,*
387 F.3d 1358 (Fed. Cir. 2004) ........................................................................34

*Comedy Club, Inc. v. Improv West Assocs.,*
553 F.3d 1277 (9th Cir. 2009) ....................................................................29 n.5

*Commonwealth Coatings Corp. v. Continental Cas. Co.,*
393 U.S. 145 (1968)....................................................................................48, 49

*Coutee v. Barington Capital Grp., L.P.,*
336 F.3d 1128 (9th Cir. 2003) ..................................................14, 15, 29, 38, 42

*Curves, LLC v. Spalding Cty., Ga.,*
685 F.3d 1284 (11th Cir. 2012) ........................................................................22

*Dice Corp. v. Bold Techs.,*
556 F. App'x 378 (6th Cir. 2014)......................................................................22

*Energy Transp. Grp., Inc. v. William Demant Holding A/S, WDH Inc.,*
697 F.3d 1342 (Fed. Cir. 2012) ........................................................................31

*First Options v. Kaplan,*
514 U.S. 938 (1995)...........................................................................................22

iv

*Flex-Foot, Inc. v. CRP, Inc.*,
  238 F.3d 1362 (Fed. Cir. 2001) ........................................... 22, 23, 24, 25, 26, 35

*General Plywood Corp. v. Georgia-Pacific Corp.*,
  362 F. Supp. 700 (S.D. Ga. 1973), *aff'd*, 504 F.2d 515 (5th Cir. 1974) ............36

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
  552 U.S. 576 (2008)...................................................................................24

*In re Bosack*,
  586 F.3d 1096 (9th Cir. 2009) ............................................................25, 38, 40

*In re Sussex*,
  781 F.3d 1065 (9th Cir. 2015) ............................................................44, 48

*Int'l Rectifier Corp. v. Samsung Elecs. Co.*,
  424 F.3d 1235 (Fed. Cir. 2005) ...........................................................23

*Jackson v. Allstate Ins. Co.*,
  785 F.3d 1193 (8th Cir. 2015) ............................................................22

*Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*,
  341 F.3d 987 (9th Cir. 2003) .........................................................14, 25, 26, 27

*Lagstein v. Certain Underwriters at Lloyd's, London*,
  607 F.3d 634 (9th Cir. 2010) ............................................................25, 38, 44

*LaTour v. Citigroup Global Mkts., Inc.*,
  544 F. App'x 748 (9th Cir. 2013) .....................................................40

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) ...........................................................15

*Matthews v. Nat'l Football League Mgmt. Council*,
  688 F.3d 1107 (9th Cir. 2012) ..........................................................26, 31

*Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*,
  44 F.3d 826 (9th Cir. 1995) .......................................................15, 26, 31, 32, 41

*More Light Invs. v. Morgan Stanley DW Inc.*,
  415 F. App'x 1 (9th Cir. 2011) .........................................................28

*Moshonov v. Walsh*,
   22 Cal. 4th 771 (2000) ......................................................................41

*New Regency Productions, Inc. v. Nippon Herald Films, Inc.*,
   501 F.3d 1101 (9th Cir. 2007) ......................................................48, 49

*Omnicare, Inc. v. RxSolutions, Inc.*,
   371 F. App'x 735 (9th Cir. 2010) ..................................................27, 28

*Pac. Reins. Mgmt. Corp. v. Ohio Reins. Corp.*,
   935 F.2d 1019 (9th Cir. 1991) .........................................................29

*Power Mosfet Techs., LLC v. Siemens AG*,
   378 F.3d 1396 (Fed. Cir. 2004) .......................................................37

*PowerAgent Inc. v. Elec. Data Sys. Corp.*,
   358 F.3d 1187 (9th Cir. 2004) .........................................................24

*Rostad & Rostad Corp. v. Inv. Mgmt. & Research, Inc.*,
   923 F.2d 694 (9th Cir. 1991) ...........................................................38

*Schoenduve Corp. v. Lucent Techs, Inc.*,
   442 F.3d 727 (9th Cir. 2006) .......................................16, 41, 42, 43

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010)..............................................................2, 3, 24, 25

*Superguide Corp. v. DirecTV Enterprises, Inc.*,
   358 F.3d 870 (Fed. Cir. 2004) .........................................................30

*Todd Shipyards Corp. v. Cunard Line, Ltd.*,
   943 F.2d 1056 (9th Cir. 1991) .........................................................25

*U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*,
   591 F.3d 1167 (9th Cir. 2010) .........................................................25

*United Paperworkers Int'l Union AFL–CIO v. Misco, Inc.*,
   484 U.S. 29 (1987)...........................................................................38

*Valueselling Associates, LLC v. Temple*,
   520 F. App'x 593, 594 (9th Cir. 2013) ...........................................27

**STATUTES**

9 U.S.C. § 10 ........................................................................................24

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") ..............................................2

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 62.1 ......................................................................22

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Alcon LenSx, Inc. ("LenSx") states as follows:

There have been no previous appeals in this proceeding.

Dr. Joseph Neev ("Dr. Neev") currently is asserting U.S. Patent No. 6,482,199 (the "'199 Patent") in *Joseph Neev v. Alcon Laboratories, Inc. and WaveLight, GmbH*, Case No. 8:15-cv-00336-JVS-JCG (C.D. Cal.).

## STATEMENT OF THE ISSUES

1.     Whether the Arbitrator (a retired U.S. District Court Judge) manifestly disregarded the law when he did precisely what the law requires—he construed the asserted claims, compared the construed claims to the accused LenSx Laser System, considered all the evidence (including conflicting expert testimony), and applied controlling Federal Circuit authority—ultimately finding noninfringement.

2.     Whether the Arbitrator exceeded his authority when he awarded costs to LenSx after both parties requested such costs and when Dr. Neev raised no objection to the Arbitrator's authority to award costs until *after* they had been awarded.

3.     Whether the district court abused its discretion in finding no partiality on the part of the Arbitrator when the only purported evidence of bias was a law firm website that listed the Arbitrator's name along with dozens of other federal judges (including several from this Court) before whom the firm's attorneys had appeared, and an accompanying, erroneously created a virtual business card that included the firm's name along with the Arbitrator's.

## INTRODUCTION

Dr. Neev asks this Court for a do-over.   He wants a different claim construction and new infringement ruling.   He wishes he never asked for (and

instead objected to) costs.  And if he could go back in time, he would choose a different arbitrator to decide this case.

But the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), does not provide do-overs.  The FAA does not allow courts to second-guess an arbitrator's legal conclusions or factual findings.  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 693 (2010).  Not even "erroneous legal conclusions" and "unsubstantiated factual findings" justify vacating an arbitration award.  *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 662 (9th Cir. 2012).  The Supreme Court has admonished that the FAA "authorizes a court to vacate an arbitration panel's decision 'only in very unusual circumstances.'"  *Stolt-Nielsen*, 559 U.S. at 693.  For example, the arbitrator must have committed a "manifest disregard of the law"—he must have *known* the applicable law and *ignored* it.  Anything less would undermine the strong public policy in favor of arbitration and deprive the parties of what they bargained for:  the speed and convenience of a less costly arbitral proceeding.

This is not the rare case or "unusual circumstance" warranting vacatur.  Dr. Neev contends that the award should be vacated because the Arbitrator allegedly misconstrued one limitation of the '199 Patent and disregarded some expert testimony on how the accused device operates.  Yet that type of fact-specific challenge to an arbitration award is prohibited.  This Court's review is limited to

whether the Arbitrator knew the law and then refused to apply it. Here, there can be no dispute that the Arbitrator knew the law—Dr. Neev concedes that the Arbitrator correctly cited this Court's law on claim construction and infringement. Nor can there be any dispute that he did not ignore the law—he did what this Court's precedent requires. The Arbitrator construed the asserted claim, applied the claim to the accused system, evaluated conflicting expert testimony, and then found noninfringement. Even if the Arbitrator reached the wrong result—which he did not—the arbitration award must stand. After all, this Court "may not disturb the arbitrators' judgment, even if convinced that 'serious error' infected the panel's award." *Stolt-Nielsen*, 559 U.S. at 696.

Nor did the Arbitrator disregard the law in finding that the parties empowered him to award the prevailing party its costs. As the district court correctly recognized, the powers of an arbitrator are defined by the arbitration agreement *and* by the submissions of the parties during the arbitration. Dr. Neev explicitly sought costs in the arbitration, and the parties jointly requested that the Arbitrator award costs to the prevailing party in their submission of issues to be decided. Having himself sought costs, Dr. Neev can no longer complain. He waived any objection by waiting until *after* costs had been decided.

Finally, Dr. Neev's last-ditch attack on the integrity of the Arbitrator is like his other arguments in this case. Dr. Neev admits he has no evidence of actual

bias. He argues that Fish & Richardson's website and virtual business card's (or "vCard") listing of Judge Rosenbaum's name—along with the names of many other judges—create a "reasonable impression of bias." Even if this website established some connection between the Arbitrator and Fish & Richardson (it does not), Fish & Richardson has never represented LenSx in this dispute and only worked on a limited number of patent prosecution matters for LenSx years ago. And if Dr. Neev's "evidence" were enough to establish bias, countless other judges (including several members of this Court and a current Supreme Court Justice) would be biased too, because they also appeared on Fish & Richardson's website.

## STATEMENT OF THE CASE

### A.    Drs. Ron Kurtz And Tibor Juhasz Pioneered The Use Of Femtosecond Lasers Used In The LenSx Laser System For Both LASIK and Cataract Surgery

This appeal arises out of an arbitration regarding whether the LenSx Laser System, which is a femtosecond laser used in cataract surgery,[1] is covered by the claims of Dr. Neev's '199 Patent, and whether LenSx is in breach of its license to that patent for failing to pay royalties on its sales of the LenSx Laser System.

The LenSx Laser System was developed by Dr. Ron Kurtz, a medical doctor, and Dr. Tibor Juhasz, a physics professor, who met as researchers at the University of Michigan. APX0585-86; APX0592. At Michigan, Drs. Kurtz and

---

[1] A femtosecond is one billionth of one millionth of a second. APX0616-17.

4

Juhasz discovered that ultra-short femtosecond-laser pulses, while they did not eliminate collateral damage to surrounding tissue, resulted in less collateral damage than the commercially available lasers used for ophthalmic surgery at that time. APX0338; APX0586; APX0618; APX0622; APX0645.

Drs. Kurtz and Juhasz used this discovery to found two successful companies that have pioneered the use of femtosecond lasers in ophthalmic surgery. First, Drs. Kurtz and Juhasz founded IntraLase, where they developed the first femtosecond laser for performing LASIK surgery. APX0587. To date, that system has been used in over four million surgeries, and it continues to be used in 60-70% of all LASIK procedures. APX0589; APX0623.

Drs. Kurtz and Juhasz then left IntraLase to focus on using femtosecond lasers in a new application—cataract surgery—at their new company, LenSx. APX0590. There, they developed the LenSx Laser System, which was the first femtosecond laser system to receive FDA approval for cataract surgery. APX0593-94. And like the IntraLase system before it, the LenSx Laser System was a success: in just the first two years after its introduction, it was used to perform approximately 200,000 cataract procedures. APX0596.

The LenSx Laser System works by using femtosecond laser pulses to create incisions and separate tissues in a patient's natural lens and cornea during cataract surgery. Each laser pulse emitted by the system deposits energy at a focal spot,

which interacts with the targeted material to create a plasma bubble. These bubbles then expand well beyond the initial target spot. APX0627-28; APX0677-78. The LenSx Laser System purposely controls the energy and placement of the pulses so that the expanding bubbles will react and coalesce, causing extensive collateral damage outside each targeted laser spot. APX0628-32; APX0657-58. This collateral damage creates cleavages that structurally weaken the lens, allowing it to be more easily separated and removed. APX0628-29; APX0677-79. After the cuts are completed, the surgeon then manually breaks up (to the extent it has not already broken apart) and removes the patient's natural lens, so that it can be replaced with an artificial lens to restore the patient's vision. APX0595-96.

### B. LenSx Licensed The '199 Patent For A Possible Future Glaucoma Application

After the LenSx Laser System received FDA approval for cataract surgery, LenSx entered into a license agreement with Dr. Neev. Although the LenSx Laser System does not practice the '199 Patent, LenSx was interested in the '199 Patent (and another of Dr. Neev's patents) for use in potential modifications to the LenSx Laser System to treat glaucoma. APX0597-98; APX0601-02; APX0636-37.[2]

---

[2] LenSx also was interested in the patent for possible defensive use against its competitors in the event LenSx was sued after launch of its product. APX0597-98; APX0636-37.

Accordingly, LenSx agreed to pay Dr. Neev royalties should it develop and sell a product that fell within any valid claim of the '199 Patent. APX0834-50.

At no time did Dr. Kurtz or Dr. Juhasz tell Dr. Neev (or even believe) that LenSx needed a license for cataract surgery. APX0598-600; APX00605; APX0614-15; APX0637-38. Indeed, the '199 Patent's method is inconsistent with the way the LenSx system works. As Dr. Neev explained, the '199 Patent claims a method to remove tissue while substantially eliminating "collateral, thermal and mechanical damage in material processing." APX0671; *see* APX0656; APX0676. The LenSx Laser System does the opposite. It *uses* collateral damage to accomplish its goal of creating cleavages in and weakening the tissue so that it can be easily broken up and removed. APX0628-29; APX0632-33; APX0657-58; APX0677-78. It does not need clean, precise cuts without collateral damage because it is essentially ripping the lens apart.

After Alcon acquired LenSx, LenSx decided that it would continue its focus on cataract surgery, rather than the glaucoma application it contemplated when taking a license to the '199 Patent. APX0602; APX0604. As required by the license, LenSx notified Dr. Neev of this decision. LenSx also told Dr. Neev that it was open to renegotiating the license, to give up its option to make the license exclusive, in light of its decision. APX0647-48.

Dr. Neev, however, was not as reasonable. Dr. Neev responded that LenSx was in breach of the license for allegedly practicing the '199 Patent and failing to pay royalties on its sales of the LenSx Laser System. APX0648-49. And, although LenSx provided Dr. Neev substantial evidence to demonstrate its noninfringement, APX0648-51, Dr. Neev disagreed with LenSx's position and attempted to terminate the license.[3] APX0650-51. Having reached an impasse, LenSx initiated arbitration as required by the license. APX0653; APX0846.

### C. The Arbitrator Construed The Claims, Found Noninfringement, And Awarded Costs Based On Both Parties' Requests For Costs

After reviewing several potential arbitrators, the parties selected retired Judge James M. Rosenbaum from the U.S. District Court for the District of Minnesota to preside over this case. *See* APX0891-93. Judge Rosenbaum served on the district court for 25 years. APX0891. Prior to his tenure on the federal bench, Judge Rosenbaum was the U.S. Attorney for the District of Minnesota. APX0892. He has received many honors, including "Best Lawyer, Alternative Dispute Resolution Category," "Minnesota Lawyer's Attorney of the Year Award

---

[3] LenSx later learned that Dr. Neev reached a settlement with Abbott Medical Optics ("AMO") in a separate district court action just two days later, in which Dr. Neev granted AMO rights that violated LenSx's option to make its license exclusive. APX0651-53. Dr. Neev claims that AMO's decision to take a license in that case is somehow equivalent to a finding of infringement. Neev Br. 39. But that is not correct. AMO's decision to license the '199 Patent for an unrelated system says nothing about whether the LenSx Laser System infringes.

for Outstanding Service to the Profession," and being designated as one of "The 100 Most Influential Minnesota Lawyers of All Time." APX0891-92. During his tenure on the district court, Judge Rosenbaum's docket included many patent disputes, including cases involving medical devices. APX0892.

Judge Rosenbaum found that LenSx did not infringe any of the nine asserted claims. APX0866. Although Judge Rosenbaum found noninfringement on all nine claims, the only claim on which Dr. Neev challenges Judge Rosenbaum's findings, and thus the only claim at issue in this appeal, is claim 5.

Claim 5 recites in relevant part:

> A method for a high precision, highly controllable, variable rate, material removal by a *continuously emitting, continuous wave (CW) beam of electromagnetic radiation*, the interaction between the electromagnetic radiation, and the material being such that a material removal depth within is approximately equal to an energy deposition depth within the target material, the method comprising the steps of:
>
> a) providing a source capable of generating an *output beam comprised of continuously emitted electromagnetic radiation*.

APX087 (emphasis added).

After reciting this Court's claim construction precedent, Judge Rosenbaum construed several claim terms, including the only term Dr. Neev now challenges. APX0908-11; APX0852-54. LenSx explained that "continuously emitting, continuous wave (CW) beam of electromagnetic radiation" in the preamble and

"an output beam comprised of continuously emitted electromagnetic radiation" in element (a) of claim 5 mean a beam that is "not inherently pulsed." APX0921-22; APX0938. LenSx's proposed construction was supported by the intrinsic record. The specification expressly defined "continuous wave (CW)" by using the term "i.e.": "the benefit of these advantages can also be realized through the use of an inherently pulsed source (*i.e.*, a source that emits pulse train *rather than* CW emission)." APX0938 (emphasis added). The specification also used the term "CW" interchangeably with "continuous wave" and "continuously emitting" in the '199 Patent. *See, e.g.*, APX0938 (citing '199 Patent, col.49:28-29 ("Any continuously emitting (CW) electromagnetic energy source"); col.49:43-44 ("Modifying the Continuous Wave (CW) output beam…"); col. 46:52-54 ("…continuously emitting laser sources known as continuous wave (CW) lasers.")). Dr. Neev argued that this term, in both locations, required no construction. APX0921-22; APX0948.

Judge Rosenbaum's preliminary construction agreed with LenSx:

> 7.    "a source capable of generating an output beam **comprised of continuously emitted** electromagnetic radiation."

> "A method for a . . . removal by **continuously emitting, continuous wave (CW)** beam of . . ."

> Preliminary claim construction:

> A non-pulsing beam.

APX0910 (emphasis in original). Judge Rosenbaum held a telephonic *Markman* hearing and issued a final claim construction order. APX0851-54. The order reaffirmed his prior construction that the two terms—the preamble and element (a)—would both be construed as "[a] non-pulsing beam." APX0853. At no point did Judge Rosenbaum revisit either of these constructions.

Judge Rosenbaum held a three-day hearing. Dr. Neev's expert, Dr. Milner, conceded that the LenSx Laser System emits and uses a pulsed beam—not a "non-pulsing" beam—to carry out its cuts in a patient's lens and cornea. APX0681-82; APX0669. LenSx's expert, Dr. Ted Norris, also testified that the LenSx Laser System does not infringe claim 5 because it cannot emit a non-pulsing output beam. APX0662-64. In addition, Dr. Juhasz and LenSx's Head of Intellectual Property, Dr. Gergely Zimanyi (another physics professor), both confirmed that the LenSx Laser System is incapable of emitting a non-pulsing output beam. APX0633-34; APX0654. Dr. Juhasz, who designed the system, testified that the LenSx procedure would not work if attempted with a continuous wave output beam—the system would simply "shut[] down." APX0634-35.

Despite this overwhelming evidence and his own admission that the LenSx Laser System does not emit a continuous wave beam, Dr. Milner nonetheless alleged that the LenSx Laser System infringes because, internal to the device, it uses an oscillator pumped by a continuous wave diode laser. APX0673-74. But

the light pumped by the laser diode is not the *output* beam of the device—it is internal to the device and is never used to modify tissue. APX0642-44 (Dr. Juhasz confirming that "the light from the pump diode cannot reach the tissue"—it simply "provides energy" for the laser); *see* APX0672-74 (Dr. Milner opining only that "the LenSx laser…begins with a continuous wave diode pump"). In fact, Dr. Milner was forced to acknowledge: "The light coming out of the LenSx laser is a pulsed beam." APX0681-82; *see also* APX0662 (Dr. Norris).

As LenSx's expert Dr. Norris explained, the beam internally generated by the oscillator is not—and cannot be—emitted from the LenSx Laser System:

> THE COURT: What you're telling me is clause A is – 5A is not possible?
>
> THE WITNESS: 5A is not possible with this system. You'd have to have a separate system to build a – this is a CW source. This is a continuously emitting source right here. So you can build those. But this system cannot produce that. It can produce only a pulsed beam.
>
> THE COURT: And this is the system that LenSx has?
>
> THE WITNESS: Correct.
>
> THE COURT: LenSx cannot produce a nonpulsing beam?
>
> THE WITNESS: Correct.

APX0664. This testimony was unrebutted.

Following the hearing, Judge Rosenbaum issued a 28-page opinion. APX0324-56 (Partial Final Award); *see also* APX0357-63 (Final Award)

12

(collectively, "the Award"). As to infringement, Judge Rosenbaum explained that he "must compare the LenSx Laser System to the claims of the '199 patent as they have been construed by the Arbitrator." APX0337 (citing 35 U.S.C. § 271 and relevant law). He further found that the parties' experts had conflicting opinions and stated that he "has considered both experts' testimony and has reached his own conclusions." APX0338.

Judge Rosenbaum explained that "[c]laim 5 of the '199 patent contains the limitation that there be a 'source capable of generating an output beam comprised of continuously emitted electromagnetic radiation.'" APX0346. Then Judge Rosenbaum found that "[n]o such source is present in the LenSx system. Its laser does not, and cannot, produce a continuous wave. It produces a series of femtosecond pulses, but there is no continuously emitted pulse." APX0346. In the absence of such a continuously emitted beam, Judge Rosenbaum found that the LenSx Laser System did not infringe claim 5.

Judge Rosenbaum also awarded $65,310.39 in costs to LenSx. APX0360. Judge Rosenbaum noted that the license agreement contemplated that each party would bear its own costs. APX0358. But he found that both parties sought fees and costs in LenSx's demand for arbitration and in Dr. Neev's response. APX0359. In fact, Judge Rosenbaum found that "Dr. Neev has done so explicitly." APX0360. Both parties also sought an award of fees and costs from

13

the Arbitrator in their joint submission of issues to be tried.  APX0360.  As a result, Judge Rosenbaum found that the parties "express[ed] their intent that the Arbitrator be afforded the authority to award such attorneys' fees and/or costs as he may deem appropriate."  APX0359-60.

### D.     The District Court Confirmed The Award In Full

After the arbitration, the parties filed a joint motion in the U.S. District Court for the Central District of California, with LenSx seeking confirmation of the arbitration award in full and Dr. Neev seeking vacatur as to claim 5 and the award of costs.  APX0517-77.  The district court confirmed the award in full.  APX0995-1001.

The district court explained that the parties agreed that Ninth Circuit law governed the standard of review under the FAA for the confirmation of arbitration awards.  APX0996.  It also noted that the Federal Circuit's and Ninth Circuit's FAA standards appear to be the same.  APX0996 n.1.  The court explained that "the scope of review afforded to district courts is extremely limited" under this standard.  APX0996 (citing *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003)).  The court acknowledged that "[m]anifest disregard of the *facts* is not an independent ground for vacatur," APX0996 (citing *Coutee v. Barington Capital Grp., L.P.*, 336 F.3d 1128, 1133 (9th Cir. 2003)), and that to find manifest disregard of the *law*, "[i]t must be clear from the record that

the arbitrators recognized the applicable law and then ignored it." APX0996 (citing *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995)).

Applying this law, the court found that Dr. Neev "misunderstands the applicable standard for reviewing an arbitration award":

> it is not enough to show that the Arbitrator's decision was incorrect because he made an error in legal reasoning or he failed to give proper weight to certain evidence presented during the arbitration. Rather, Petitioner must show the Arbitrator refused or utterly failed to apply the relevant law.

APX0997 (citing *Mich. Mut. Ins. Co.*, 44 F.3d at 832; *Coutee*, 336 F.3d at 1133). The district court concluded: "No such defect is evident in the Arbitrator's award." APX0997.

Turning to claim construction, the court stated that "[p]atent infringement analysis requires claim terms to be given their plain and ordinary meaning as understood by one of ordinary skill in the art." APX0998 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)). The court concluded that "[t]his is what the Arbitrator did in construing the term 'output' in Claim 5(a) to be a reference to the external continuous beam, not that inside the device." APX0998. The court also noted that the Arbitrator's construction found support in the claim itself, because "the language in Claim 5(a) explicitly refers to

the invention having a source capable of generating a continuous 'output' beam, not a continuous beam *within the device*."  APX0998 (emphasis in original).

The district court explained that the Arbitrator "compared the LenSx Laser Systems' capabilities with the features described in Claim 5, found that Respondent's system did not have the same features, and therefore concluded there was no infringement."  APX0998.  That conclusion, the court held, "was based on the Arbitrator's interpretation of the claim language and his understanding of the testimony concerning the LenSx Laser System's capabilities."  APX0998.  In other words, after construing the claim, the Arbitrator did what was required of him under the law—he considered the conflicting expert testimony and made a determination regarding infringement.  The district court thus concluded that "[a]t no point in his reasoning, did the Arbitrator manifestly disregard the law."  APX0998.

As to costs, the district court first explained that under the relevant Ninth Circuit law, "the scope of an arbitrator's authority is determined by the contract requiring arbitration as well as by the parties' definition of the issues to be submitted in the submission agreement."  APX0999 (citing *Schoenduve Corp. v. Lucent Techs, Inc.*, 442 F.3d 727, 732 (9th Cir. 2006)).  Under Ninth Circuit precedent, "the parties' submission of issues to arbitration broadens the scope of the Arbitrator's authority to grant relief."  APX1000.  The parties here "gave the

Arbitrator authority to awards [sic] costs despite what was said in the Agreement." APX1000.  Specifically, "[t]he Parties explicitly agreed that one of the issues the Arbitrator would decide was '[w]hether either party is entitled to damages or other relief, including . . . costs and attorneys' fees.'"  APX1000.  The court also noted that the parties had a chance to object to the issues being submitted to the Arbitrator.  APX1000.  Yet although Dr. Neev objected to other issues, he never objected to the Arbitrator's authority to award costs until after they had been awarded.  APX1000.

After the district court entered final judgment, Dr. Neev appealed. APX1011-12.

### E.    The District Court Found Dr. Neev's Request For An Indicative Ruling Of Evident Partiality "Clearly Unwarranted"

After Dr. Neev filed his notice of appeal, he tried again to vacate the award. This time, Dr. Neev sought an indicative ruling that the Arbitrator was biased based on an alleged relationship between the Arbitrator and LenSx's former patent counsel, Fish & Richardson.[4]  Dr. Neev's only evidence of that alleged relationship was a webpage on Fish & Richardson's website that listed Judge Rosenbaum, along with dozens of other current and former federal judges, and included vCards

---

[4] In his motion, Dr. Neev erroneously claimed Fish & Richardson was serving as counsel for LenSx at the time of the dispute.  APX1042.

for each.  But, as explained to Dr. Neev before he filed his motion, this was merely a listing of judges before whom Fish & Richardson attorneys had appeared. APX1090; *see also* APX1220-21.  Fish & Richardson had no relationship with Judge Rosenbaum, APX1223, and the webpage was an internal marketing tool developed for Fish & Richardson by a third-party vendor which was not intended to be publicly available, and that the firm had taken down once it was made aware the webpage was publicly available, APX1220-21.

Accordingly, the district court denied Dr. Neev's second motion as well. The court explained that Dr. Neev presented no evidence of actual bias. APX01335.  The court also rejected Dr. Neev's argument that there was "evident partiality" on the part of the Arbitrator, based on the alleged relationship between Judge Rosenbaum and Fish & Richardson.

The court found that Dr. Neev's proffered evidence of a connection between LenSx and Fish & Richardson was "weak."  APX1335.  The court found that Fish & Richardson was not involved in the arbitration between LenSx and Dr. Neev. APX1335-36.  In addition, the court found that Fish & Richardson has not had any relationship with LenSx since February 2012—before Dr. Neev attempted to terminate the parties' agreement and before the demand for arbitration was filed. The court even noted that Fish & Richardson is currently representing clients adverse to LenSx's parent and several affiliated companies.  APX1336.

The district court further held that Dr. Neev's alleged evidence of any relationship between Fish & Richardson and the Arbitrator—i.e., the webpage and vCard—was "even less substantial." APX1336. The district court held that it would be unreasonable to find a relationship based on the Fish & Richardson website, which also listed Supreme Court Justice Alito; current and former Federal Circuit Judges Bryson, Clevenger, Dyk, Friedman, Gajarsa, Linn, Lourie, Mayer, Michel, Nichols, Nies, Prost, Rader, Rich, Schall, and Taranto; and dozens of district court judges. APX01336; *see* APX1085-86. The webpage simply listed the judges before whom Fish & Richardson attorneys had appeared. APX1336.

The court also rejected Dr. Neev's other piece of alleged evidence—the vCard with Judge Rosenbaum's name that was available from the webpage. The vCard was largely incomplete but listed Fish & Richardson under "company." The court found that the vCard was erroneously created by the firm's vendor without its authorization. APX1336. Judge Rosenbaum was not an employee of the firm. APX1223. Dr. Neev's allegations also were undermined by unrebutted evidence that there were never any internal links on the Fish & Richardson website to these pages, nor was Fish & Richardson even aware they could be found until Dr. Neev raised the issue. APX1336-37. The district court thus explained:

> we do not think it is reasonable, even in the absence of any other information, to conclude based on these webpages that F&R has a relationship with all of the

> listed judges—including a sitting U.S. Supreme Court Justice."

APX1337.

## SUMMARY OF ARGUMENT

Under the FAA, courts may not review an arbitrator's factual findings or legal conclusions, even if the court believes that analysis to be erroneous. Instead, to vacate an arbitration award, a reviewing court must find that the arbitrator committed a manifest disregard of the law—that the arbitrator was aware of the relevant law and purposely ignored it.

Dr. Neev cannot meet that stringent standard. First, the district court correctly concluded that the Arbitrator recognized and then applied the applicable law. The Arbitrator construed the claim after reciting applicable claim construction principles, compared the claim to the accused LenSx Laser System, weighed the conflicting evidence, and found noninfringement. That is enough to affirm the district court. Even if the Arbitrator misapplied the law or clearly erred on the facts—which he did not—that is not a ground for vacatur. The FAA precludes courts from revisiting the law, reweighing the evidence, and substituting their own conclusions for the arbitrator's.

Second, the district court correctly ruled that the Arbitrator did not disregard the law in awarding costs. As the Ninth Circuit has explained, the powers of the Arbitrator are defined by both the arbitral agreement and the parties' submission of

20

issues to be decided.  The Arbitrator here acted well within his powers.  Both Dr. Neev and LenSx requested costs, and they jointly submitted the issue of costs for the Arbitrator to decide.  And consistent with his own request for costs, Dr. Neev did not object to the Arbitrator's authority to award costs until *after* LenSx had prevailed and the Arbitrator determined that LenSx was entitled to costs.  Having submitted the issue to the Arbitrator and lost, it was too late for Dr. Neev to change his mind.

Finally, Dr. Neev asks this Court to besmirch the reputation of a distinguished former federal judge.  But Dr. Neev admits he can show no actual bias on the part of the Arbitrator.  Nor can he demonstrate any relevant connection between LenSx and Fish & Richardson, or any connection between Fish & Richardson and the Arbitrator at all.  All Dr. Neev has is a webpage and vCard listing the Arbitrator's name as purportedly affiliated with Fish & Richardson.  Yet the district court found the Arbitrator's name was listed without his knowledge. And if that were enough to establish bias, numerous other judges, including several members of this Court, would be biased too.  The district court's finding that Dr. Neev's bias allegations are "clearly unwarranted" should be affirmed.

## STANDARD OF REVIEW

"When reviewing district court decisions upholding arbitration awards," the Federal Circuit accepts the district court's "findings of fact that are not clearly

erroneous and decide[s] questions of law de novo." *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001) (citing *First Options v. Kaplan*, 514 U.S. 938, 948 (1995)).  This standard of review applies to the *district court's* findings of facts and conclusions of law with respect to *its* decision to confirm or vacate the award.  For example, a district court's factual findings related to allegations of bias are reviewed for clear error, and the district court's legal conclusions as to bias are reviewed de novo.  This standard, however, does not extend to this Court's review of the *Arbitrator's* underlying factual findings and legal conclusions.  As discussed below, that review of the arbitration award is governed by the more deferential standard set forth in the FAA.  *See infra* pp. 24-30.

Courts of appeals review a district court's denial of an indicative ruling under Federal Rule of Civil Procedure 62.1 for an abuse of discretion.  *Dice Corp. v. Bold Techs.*, 556 F. App'x 378, 384 (6th Cir. 2014) ("treating a denial of indicative relief as we would a Rule 60(b) motion, we review the district court's order denying Dice's motion for indicative ruling for abuse of discretion"); *Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1206 (8th Cir. 2015) ("We review a denial of indicative relief for abuse of discretion."); *Curves, LLC v. Spalding Cty., Ga.*, 685 F.3d 1284, 1287 n.2 (11th Cir. 2012) (noting that plaintiffs' motion for an indicative ruling as to retroactive recusal of Judge Jack Camp was "pursuant to Rule 60(b) and 62.1").

Federal Circuit law applies to those issues that are "intimately involved in the substance of enforcement of the patent right." *Flex-Foot*, 238 F.3d at 1365 (citing *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855-56 (Fed. Cir. 1999)).   Ninth Circuit law otherwise applies to this Court's review of the district court's confirmation award of costs.  *Id.* at 1365-66 (applying state and regional circuit law to a challenge to the award of arbitration fees); *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 424 F.3d 1235, 1238 (Fed. Cir. 2005) (applying both Ninth Circuit and California law to an award of arbitration fees pursuant to a consent judgment).   Because both are grounded in the FAA, Federal Circuit and Ninth Circuit precedent governing review of a district court's confirmation of an arbitration award are essentially the same.  *Compare Flex-Foot*, 238 F.3d at 1365, 1367 (applying deferential standard as required by the FAA), *and Biller*, 668 F.3d at 663-64(same).

## ARGUMENT

## I.   DR. NEEV CANNOT DEMONSTRATE THAT THE ARBITRATOR MANIFESTLY DISREGARDED THE LAW IN FINDING NONINFRINGEMENT

### A.   Judicial Review Of Arbitration Awards Under The FAA Is Both Limited And Highly Deferential

At the heart of this case is the standard with which arbitration awards are reviewed under the FAA.  Dr. Neev contends that the award should be vacated because the Arbitrator allegedly erred in his claim construction and infringement

determinations.  Yet this Court cannot review the *correctness* of the Arbitrator's rulings.  By agreeing to efficient, expeditious, and cost-effective arbitral proceedings, Dr. Neev (and LenSx) gave up that right.  Judicial review of arbitration awards under the FAA is "both limited and highly deferential." *PowerAgent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004). This Court has held that the FAA "sets forth that the decision of the arbitration panel is entitled to great deference." *Flex-Foot*, 238 F.3d at 1367.  And the Supreme Court has repeatedly admonished that the FAA "authorizes a court to vacate an arbitration panel's decision 'only in very unusual circumstances.'" *Stolt-Nielsen*, 559 U.S. at 693.

The FAA provides four statutory grounds on which an arbitration award can be vacated:  (1) fraud in procuring the award; (2) partiality on the part of the arbitrators; (3) gross misconduct by the arbitrators; and (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10; *Biller*, 668 F.3d at 663-64; *Flex-Foot*, 238 F.3d at 1365.  These are the only grounds for vacatur, since "[a]ny other reading opens the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process.'"  *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008).  These limited grounds

reflect "the longstanding rule that, '[i]f [an arbitration] award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court . . . will not set [the award] aside for error, either in law or fact.'" *Stolt-Nielsen*, 559 U.S. at 694.  In light of this admonition, both the Ninth Circuit and this Court have interpreted the grounds for vacatur narrowly, and will set aside an arbitration award only in rare circumstances.  *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1060 (9th Cir. 1991); *Flex-Foot*, 238 F.3d at 1367.  The heavy burden of establishing grounds for vacating an arbitration award is on the party seeking vacatur.  *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).

At issue here is the last statutory ground.  The Ninth Circuit has held that arbitrators "exceed their powers in this regard not when they merely interpret or apply the governing law incorrectly, but when the award is completely irrational, or exhibits a manifest disregard of law."  *Biller*, 668 F.3d at 665 (quoting *Kyocera*, 341 F.3d at 997); *see Flex-Foot*, 238 F.3d at 1366.  Manifest disregard of the law "is a high standard for vacatur."  *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010).  "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award" under the FAA.  *Biller*, 668 F.3d at 662; *In re Bosack*, 586 F.3d 1096, 1102 (9th Cir. 2009).  It is not enough to show that the arbitrator "misunderstood the law

and misapplied it." *Biller*, 668 F.3d at 668 n.7.  Instead, "[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Mich. Mut. Ins. Co.*, 44 F.3d at 832; *see Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1115 (9th Cir. 2012) (same).

This Court applied these principles in *Flex-Foot* when it rejected the defendant's contention that the arbitration panel manifestly disregarded the law. *Flex-Foot*, 238 F.3d at 1366-67.  There, the defendant argued that the arbitration panel must have "ignore[d] the necessary step of claim construction."  *Id.* at 1366. This Court disagreed.   Rather than subject the arbitration panel's claim constructions to judicial scrutiny, the Court noted that the arbitration panel did what was required:  it defined "the scope of each of the three claim limitations focused on by the parties."  *Id.* at 1366-67.  Although the Court acknowledged that the "written decision lacks a thorough claim construction such as would be undertaken by a court," it did not review the substance of the arbitration award, noting instead that "the Arbitration Act sets forth that the decision of the arbitration panel is entitled to great deference."  *Id.* at 1003.

Many other decisions agree.  In *Kyocera Corporation v. Prudential-Bache Trade Services*, the Ninth Circuit declined to consider whether the arbitrator relied on "unsubstantiated facts or legal conclusions that constitute errors of California law."  341 F.3d at 1002.  The Ninth Circuit explained that to do so would amount

to a review of the arbitrator's factual and legal conclusions. *Id.* The court noted that "[t]he risk that arbitrators may construe the governing law imperfectly," or "may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes." *Id.*

Similarly, in *Valueselling Associates, LLC v. Temple*, the Ninth Circuit held that it could not re-evaluate the correctness of the arbitrator's copyright infringement ruling. 520 F. App'x 593, 594 (9th Cir. 2013). There, the plaintiff asserted that the arbitrator committed a manifest disregard of the law in finding that its "Value Selling Program" was not subject to copyright protection and in determining the accused "Enterprise Selling Program" did not infringe. *Id.* The Ninth Circuit disagreed, because the arbitrator's ruling appeared to apply the "substantially similar"/"virtually identical" test and "with the intrinsic/extrinsic test set out" in Ninth Circuit law. *Id.* The court thus explained that the arbitrator's legal "conclusions, even if erroneous, do not evince 'manifest disregard of the law.'" *Id.*

The Ninth Circuit also held that the arbitrator did not manifestly disregard the law in *Omnicare, Inc. v. RxSolutions, Inc.*, 371 F. App'x 735, 737-38 (9th Cir. 2010). In that case, the arbitrator found that the defendant did not breach the parties' contract. *Id.* at 737. On appeal, the plaintiff argued there had been a "manifest disregard of the law" because the arbitrator failed to correctly apply

27

certain Centers for Medicare & Medicaid Services ("CMS") regulations incorporated into the agreement. *Id.* But the Ninth Circuit disagreed. The court explained that "the arbitrator recognized that the CMS regulations were controlling and then applied them to the contract dispute." *Id.* at 738. "That the arbitrator did not adopt Omnicare's preferred conclusion after applying the CMS rules to the contract dispute does not mean that the arbitrator disregarded either the CMS rules or the contract provisions." *Id.* In other words, "Omnicare has not shown that the arbitrator 'understood and correctly stated the law, but proceeded to disregard the same.'" *Id.*; *see also See More Light Invs. v. Morgan Stanley DW Inc.*, 415 F. App'x 1, 2-3 (9th Cir. 2011) (reversing vacatur and finding no manifest disregard of the law where the arbitrator recognized and applied regulation but arrived at a different legal conclusion than the district court).

The *American Postal Workers Union* case that Dr. Neev repeatedly cites is not to the contrary. *Am. Postal Workers Union AFL-CIO v. U.S. Postal Service*, 682 F.2d 1280, 1285 (9th Cir. 1982). In that case, the arbitrator made explicit findings that postal employee and union member Michael Murphy participated in a strike. *Id.* at 1283-84. The arbitrator also acknowledged that the law required that striking postal workers, such as Murphy, be discharged. *Id.* Yet the arbitrator refused to apply this law (and thus ignored it) because he felt that the required sanctions were "too severe." *Id.* Under these circumstances, The Ninth Circuit

found a manifest disregard of the law. The award resulted in a nullification of Congress's mandate that striking workers be sanctioned. *Id.* at 1285. In other words, *American Postal Workers Union* demonstrates how rare vacatur for manifest disregard of the law is:  the arbitrator must find that the non-prevailing party *is entitled* to relief under the law and then *not* award it.[5]

Far from permitting a reevaluation of the facts or the law in a particular case, *American Postal Workers Union* simply confirms the settled rule that "[a]n arbitrator's award will not be vacated because of erroneous findings of fact or misinterpretations of law." *Id.* at 1285. Nor did *American Postal Workers Union* create a "manifest disregard of the *facts*" ground for vacatur, as Dr. Neev suggests. Neev Br. 19-20. In the decades since that decision, the Ninth Circuit has repeatedly reiterated that "*American Postal* does not establish an independent 'manifest disregard of the facts'" ground for vacatur. *Coutee*, 336 F.3d at 1133; *see also Pac. Reins. Mgmt. Corp. v. Ohio Reins. Corp.*, 935 F.2d 1019, 1026 (9th

---

[5] Other than *American Postal Workers Union*, LenSx is aware of only one other case in the past three decades in which the Ninth Circuit has vacated an arbitration award for manifest disregard of the law. *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277 (9th Cir. 2009). Like *American Postal Workers Union*, *Comedy Club* involved the unique circumstance in which the Arbitrator recognized the controlling authorities and then blatantly misconstrued them so that they would not apply. *Id.* at 1293. *Comedy Club* has no application here because there is no indication in the Arbitrator's order that he interpreted controlling Federal Circuit precedent in a way to make it inapplicable. To the contrary, Dr. Neev concedes that the Arbitrator correctly recited the law.

Cir. 1991) (observing that *American Postal* does not permit a reviewing court to reexamine the "ultimate weight of [plaintiff's] evidence").

## B. The Arbitrator Did Not Manifestly Disregard The Law In Finding Noninfringement Of Claim 5

The district court correctly confirmed the arbitration award of noninfringement. As the district court found, the Arbitrator did what this Court's law requires. The Arbitrator both understood and then followed this Court's precedent for evaluating alleged patent infringement. He explained that "[a] determination of infringement requires two steps, first to properly construe the patent claims, second to compare those claims to the accused device or method." APX0335 (citing 35 U.S.C. § 271; *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 874 (Fed. Cir. 2004)). Indeed, Dr. Neev concedes that the Arbitrator construed the asserted claim, compared it to the accused device, and found noninfringement. Neev Br. 27-28. Nothing more was required. As shown above, the FAA precludes the more expansive review that Dr. Neev seeks.

### 1. The Arbitrator correctly stated this Court's claim construction principles and did not ignore them

The Arbitrator correctly stated and applied this Court's claim construction principles when construing claim 5. He stated that "claim terms 'mean what they say and have the ordinary meaning that would be attributed to those words by a person skilled in the relevant art.'" APX0335 (quoting *Superguide*, 358 F.3d at

874).  He further explained that a skilled artisan "'is deemed to read the claim term not only in the context of the particular claim in which it appears, but in the context of the entire patent, including the specification.'"  APX0335 (quoting *Energy Transp. Grp., Inc. v. William Demant Holding A/S, WDH Inc.*, 697 F.3d 1342, 1349 (Fed. Cir. 2012)).  At the same time, he recognized that "'a claim construction must not import limitations from the specification into the claims.'"  APX0335 (quoting *Energy Transp.*, 697 F.3d at 1349).

Nor can Dr. Neev show that the Arbitrator refused to apply this law or ignored it.  *Mich. Mut. Ins. Co.*, 44 F.3d at 832; *Matthews*, 688 F.3d at 1115.  Nothing in the Arbitrator's ruling evinces a manifest disregard of this Court's claim construction principles.  Indeed, Dr. Neev does not dispute that "a source capable of generating an output beam comprised of continuously emitted electromagnetic radiation" means a "non-pulsing beam"—the Arbitrator's construction for claim 5 element (a).  APX0337.

Instead, Dr. Neev contends the Arbitrator erred because Dr. Neev disagrees that the "output beam" emitted by this "source" must be the beam that exits the system and that is used to modify the targeted material.  Neev Br. 29-32.  Indeed, Dr. Neev asks this Court to overlook the rest of Claim 5 when arguing that "a continuous wave source . . . is all that Step (a) requires," Neev Br. 31, and that "the

arbitrator conflated the source of the energy with the ultimate beam that is created by the LenSX [sic] system," Neev Br. 32.

As the district court correctly found, that argument is nothing more than a challenge to the *application* of the law to the particular facts of this case. APX0997-98.    But that type of run-of-the-mill claim construction argument—which goes to the correctness of the construction itself—is not reviewable under the FAA.  APX0996-97.  After all, it is not enough to show that the Arbitrator made a legal error, made a factual mistake, or misread the intrinsic record.  To prevail, Dr. Neev must show that the Arbitrator understood this Court's claim construction principles and then decided to ignore them.  *Mich. Mut. Ins. Co.*, 44 F.3d at 832.  Dr. Neev's so-called "better" interpretation of the limitation, even if correct, is not enough to support vacatur under the FAA.  *Id.*

In any event, the Arbitrator's construction finds support in the intrinsic record.  It is Dr. Neev who fails to give meaning to all the words in the claim.  His argument that the accused system does not need to "emit" (output) a "continuously emitted pulse" (non-pulsing beam) is contradicted by the claim language itself. *Contra* Neev Br. 29.   As the district court explained, the limitation at issue "explicitly refers to the invention having a source capable of generating a continuous 'output' beam, not a continuous beam *within the device*."  APX0998 (emphasis in original).    Dr. Neev's new construction, which keeps the

"non-pulsing beam" entirely internal in the system, gives no meaning to the requirement that the beam be an "*output* beam"—one external to the device.

The Arbitrator's construction also is supported by claim 5's preamble, which states, in relevant part:  "A method for a high precision, highly controllable, variable rate, material removal by a continuously emitting, continuous wave (CW) beam of electromagnetic radiation."  APX087.  The Arbitrator found that "[a] method for . . . removal by a continuously emitting, continuous wave (CW) beam" also means "[a] non-pulsing beam."  APX0367.  This means the claimed invention removes material by "*emitting*" a non-pulsing beam, which is entirely consistent with (and supports) the non-pulsing beam in element (a) being an "*output* beam." For that reason, Dr. Neev's argument that "Claim 5 nowhere recites a requirement that an accused system *emit* a 'continuously emitted pulse'" fails, even if he were entitled to a less deferential standard of review.  *Contra* Neev Br. 29 (emphasis added).[6]

Still, Dr. Neev argues that the Arbitrator construed only the term "continuously emitting" in element (a) and that "no other terms contained in Claim 5 were given a construction by the arbitrator."  Neev Br. 13; *see id.* at 26.

---

[6] The Arbitrator's "non-pulsing beam" construction also is supported by the specification.  The specification expressly defines "continuous wave" as non-pulsing, differentiating it from a pulsed beam.  *See* APX0938.

He further contends that LenSx never argued for (and thus waived) any construction of the preamble. Neev Br. 13, 40. But as the record in the case shows, LenSx sought, and the Arbitrator provided, a construction of both the preamble *and* element (a). APX0921-22; APX0938.

More importantly, Dr. Neev never made (and thus waived) his current appeal arguments to the Arbitrator. Neev Br. 35-42. Dr. Neev argued only for plain meaning for *both* the preamble and element (a). APX0921-22. The technical claim construction arguments that Dr. Neev makes on appeal as to what particular passages of the specification and prosecution history mean were not raised (or even *cited*) in the arbitration. Dr. Neev could not make his new arguments on appeal from a *district court* claim construction decision subject to de novo review. *Caterpillar Inc. v. Sturman Indus., Inc.,* 387 F.3d 1358, 1368 (Fed. Cir. 2004) (holding that a party who fails to make an argument to the district court waives that

argument on appeal). It is far too late for him to make his new arguments now under the FAA's highly deferential and far more limited review.[7]

Regardless, the inquiry here is not whether the Arbitrator correctly construed the claims. *Flex-Foot*, 238 F.3d at 1366. The inquiry is to whether the Arbitrator's award reflects a manifest disregard for this Court's claim construction principles. Dr. Neev is entitled to vacatur only if the Arbitrator found that Dr. Neev was entitled to a particular construction but then declined to provide it. *American Postal Workers Union*, 682 F.2d at 1284.

---

[7] Nor do Dr. Neev's arguments even demonstrate an unequivocal entitlement to relief. *Contra* Neev Br. 31, 35-36. As discussed below, the accused LenSx Laser System is incapable of producing a non-pulsing output beam. Nothing in claim 5 permits the claimed system to be *incapable* of emitting a non-pulsing beam. Element (b) simply says that "at least *one* modified beam comprising a plurality of pulses." APX087 (emphasis added). Element (b) does not (and cannot) require that *all* output beams be incapable of being non-pulsing (which would conflict with both element (a), which requires an output beam "capable of" being non-pulsed, and the preamble). Indeed, this is confirmed by the parts of the specification Dr. Neev now cites, which teach that a CW "source output *may* then be temporally and spatially modified in an output modifying device to produce a pulsed output characteristics in accordance with the requirement of the present invention." APX073 (emphasis added). In other words, claim 5 does not *require* the output beam always to be modified. This makes sense in light of the differences between claims 1 and 5. Unlike claim 5, claim 1 does *not* state a method for removal using a CW source and instead states a method for removal using "a *pulsed* electromagnetic radiation beam." APX087 (emphasis added). In any event, this is precisely the type of judicial scrutiny of arbitration awards that the FAA prohibits. That should be particularly true here, where these arguments were not raised to the arbitrator, these technical passages of the specification were not previously cited or discussed, and there was no testimony (expert or otherwise) as to what they mean.

At bottom, Dr. Neev's argument is not that the Arbitrator ignored this Court's claim construction principles. It is that the Arbitrator allegedly misapplied those principles and reached a construction that Dr. Neev does not like. But if Dr. Neev were right, any claim construction decided by an arbitrator would be reviewable on confirmation for its correctness. The Supreme Court has held that the FAA precludes that type of judicial review.

### 2. The Arbitrator correctly stated this Court's law with regard to infringement and did not ignore it

Nor can Dr. Neev demonstrate that the Arbitrator ignored this Court's infringement precedent. The Arbitrator did what the law requires: he compared the construed claim to the LenSx Laser System, explaining that "all steps, stages and elements of the method claimed in the patent" must be present for a finding of infringement. APX0870 (citing *General Plywood Corp. v. Georgia-Pacific Corp.*, 362 F. Supp. 700, 703 (S.D. Ga. 1973), *aff'd*, 504 F.2d 515 (5th Cir. 1974)). Because the Arbitrator applied this law to the facts of this case, the correctness of his ruling is not subject to judicial scrutiny.

Even so, the Arbitrator's conclusion that the LenSx Laser System does not infringe the '199 Patent is unassailable. Infringement was contested. Both parties presented expert testimony. The Arbitrator noted that the experts were "highly qualified, and as is typical, the experts' testimony tended to be self-cancelling." APX0871. But the Arbitrator also found Dr. Neev's expert less credible. He

36

found that Dr. Milner shared "some congruent commercial interests" with Dr. Neev. APX0871. He further found that Dr. Milner's prior testimony before the Patent Office conflicted with his arbitration testimony, which "tended to undermine his own credibility." APX0873 n.13.

Dr. Neev's contention that the parties agreed that all elements of claim 5 are present in the LenSx Laser System is contradicted by the record in this case. *Contra* Neev Br. 25-26. To infringe, the accused LenSx Laser System must have "a source capable of generating an output beam comprised of continuously emitted electromagnetic radiation"—a non-pulsing *output* beam. APX0910. When asked about claim 5, LenSx's expert, Dr. Norris, stated he understood the claim to require a non-pulsing *output* beam to carry out tissue modification in the eye. APX0664; *see Power Mosfet Techs., LLC v. Siemens AG*, 378 F.3d 1396, 1408-09 (Fed. Cir. 2004) (rejecting attempts to read a claim element in isolation and holding that the ultimate question of infringement could only be determined by examining the elements in the context of the claim as a whole). Dr. Norris testified that the LenSx Laser System does not have a non-pulsing *output* beam. APX0662-64. Indeed, both experts agreed that tissue modification in the LenSx Laser System is carried out with a pulsed output beam. APX0681-62, APX0662-64, APX0669.

Having considered the expert testimony, the Arbitrator was permitted to credit Dr. Norris over Neev's expert, Dr. Milner, (whom he found less credible)

and find that the accused system does not have a non-pulsing *output* beam. APX0873 n.13; APX0879.  The Court need not dive any deeper into the Arbitrator's noninfringement finding.  Any review of the Arbitrator's factual and credibility determination is "prohibited."  *Bosack*, 586 F.3d at 1104.  This Court simply is not "in a position to second guess the arbitrators' finding of credibility." *Rostad & Rostad Corp. v. Inv. Mgmt. & Research, Inc.*, 923 F.2d 694, 697 (9th Cir. 1991) (citing *United Paperworkers Int'l Union AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 37-38 (1987)).  For that reason, the contested issues of infringement cannot be revisited under the FAA.  *Lagstein*, 607 F.3d at 642; *Coutee*, 336 F.3d at 1134.

### 3.    *Dr. Neev's fact-based arguments ignore the highly limited and deferential review under the FAA*

Unable to show that the Arbitrator ignored the law, Dr. Neev argues the facts.  Relying on *American Postal Workers Union*, Dr. Neev argues that the "uncontested" facts support a finding of infringement.  Neev Br. 29-31.  But unlike in *American Postal*, the Arbitrator did not *find* as fact that Dr. Neev was entitled to relief under the law and then refuse to award it because that result would be "too severe" or unjust.  *American Postal Workers Union*, 682 F.2d at 1284.  Rather, the facts here were contested by both sides, and the experts' testimony was "self-cancelling."  APX0871; *Lagstein* 607 F.3d at 641-42.

Dr. Neev also argues that the Arbitrator "fabricate[d]" an entirely new claim requirement in order for the LenSx Laser System to infringe—a "continuously

emitted pulse." Neev Br. 17, 21. Even if the Arbitrator had done so—which he did not—that would simply be an erroneous finding of fact or law that does not justify setting aside an arbitrator's decision. *Biller*, 668 F.3d at 662. In any event, the Arbitrator did not fabricate a new limitation. The Arbitrator's use of the phrase "continuously emitted pulse" simply is another way of stating claim 5's requirement that there be a "continuously emitting" or "non-pulsing" beam. The Arbitrator's choice of words does not mean that he somehow conducted a brand-new claim construction proceeding and invented a new concept just to find noninfringement.

Nor would the Arbitrator's reliance on the preamble to find noninfringement be legal error, let alone a manifest disregard of the law. As the district court noted, the preamble can be a separate limitation. APX0998 n.3. A preamble may be construed as limiting "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim," and there is no legal prohibition against the Arbitrator making that determination. *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (citation omitted). Even if the preamble were found to be limiting in error, that would not be a manifest disregard of the law. It would simply be a legal or factual error that could not be reviewed under the FAA. *Biller*, 668 F.3d at 662.

Dr. Neev further argues that the Arbitrator failed to sufficiently articulate his reasoning, and that the district court speculated about that reasoning in order to confirm the Award. Neev Br. 35-42. Even if true, this would not warrant vacatur, since "arbitrators are not required to set forth their reasoning supporting an award," *Bosack*, 586 F.3d at 1104, and courts generally presume that arbitrators relied on permissible grounds in reaching their conclusions. *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992); *see also LaTour v. Citigroup Global Mkts., Inc.*, 544 F. App'x 748, 749 (9th Cir. 2013) (affirming denial of petition to vacate, holding that "[a]lthough the decision does not offer much insight into the panel's reasoning, nothing in the record reveals a disregard for applicable law"). Moreover, the Arbitrator clearly stated that the LenSx Laser System does not infringe because "[i]ts laser does not, and cannot, produce a continuous wave" —"[i]t produces a series of femtosecond pulses"—clearly demonstrating his understanding and reliance upon the difference between continuous wave ("nonpulsing") and pulsed output beams. APX0879.

Finally, Dr. Neev appears to argue that the Arbitrator's award was "irrational," *see* Neev Br. 28, but an award may be found to be irrational only when it "fails to draw its essence from the agreement." *Biller*, 668 F.3d at 665. In contrast, Dr. Neev's "irrationality" argument has nothing to do with the provisions of the parties' license agreement; he argues that only because the Arbitrator

40

declined to find infringement, and infringement would have resulted in royalties under the license agreement. That an infringing product would have required payment of royalties is not in dispute. But the agreement does not also require that any product sold by LenSx be found to infringe simply because Dr. Neev alleges as much. The fact that Dr. Neev disagrees with the Arbitrator's decision does not make it "irrational" or mean it "fail[s] to draw its essence from the agreement."

## II.   THE ARBITRATOR DID NOT EXCEED HIS POWERS WHEN HE AWARDED COSTS TO LENSX

The district court correctly confirmed the award of costs to LenSx. The Ninth Circuit has held that "[t]he scope of the arbitrator's authority is determined by the contract requiring arbitration as well as by the parties' definition of the issues to be submitted in the submission agreement." *Schoenduve Corp. v. Lucent Techs, Inc.*, 442 F.3d 727, 732 (9th Cir. 2006); *see Moshonov v. Walsh*, 22 Cal. 4th 771, 776 (2000) (finding that because recovery of fees is one of the "contested issues of law and fact submitted to the arbitrator for decision, the arbitrator's decision was final and could not be judicially reviewed for error"). "In other words, the initial contract to arbitrate may be modified or expanded by the submission agreement." *Schoenduve*, 442 F.3d at 733 (internal quotations and brackets omitted). When there is no objection to the submission agreement, the arbitrator's authority may extend to any issues raised (even implicitly) in the submission agreement. *Id.*; *Mich. Mut. Ins. Co.*, 44 F.3d at 830 (same). In

addition, "the arbitrator's interpretation of the scope of his powers is entitled to the same level of deference as his determination on the merits." *Schoenduve*, 442 F.3d at 732.

As the district court correctly recognized, *Schoenduve* demonstrates the breadth of the Arbitrator's power to decide any submitted issues, even if not otherwise permitted by the arbitration agreement. APX0999-1000. In *Schoenduve*, the parties submitted a breach of contract dispute to arbitration. Although the arbitrator found no breach, he awarded quasi-contract damages anyway. The Ninth Circuit held that the arbitrator did not exceed his authority because the demand for arbitration sought damages "arising from breach of contract *and other claims*." 442 F.3d at 732 (emphasis added). Since there was no objection to the "other claims" being decided, the parties agreed to arbitrate them. *Id.* ("By not objecting to the Demand for Arbitration, Lucent essentially agreed to arbitrate all issues surrounding Schoenduve's claim for commissions."). Consistent with these principles, the Ninth Circuit has also held that an "arbitration panel may award attorney's fees, even if not otherwise authorized by law to do so, if both parties submit the issue to arbitration." *Coutee*, 336 F.3d at 1136.

So too here. In his response to the demand for arbitration, Dr. Neev sought "costs and attorney fees." APX0270. When Dr. Neev and Alcon submitted the Joint Proposed List of Issues to Be Decided by the Arbitrator, *both* sought "costs

42

and attorneys' fees." APX0898. Indeed, the Arbitrator noted that Dr. Neev "has done so explicitly." APX0360. Based on these submissions, the Arbitrator was well within his powers to conclude that both parties submitted the award of costs for arbitration. Having failed to lodge a timely objection (and having sought costs himself), Dr. Neev cannot show that the Arbitrator exceeded his authority when the Arbitrator simply ruled on the issues the parties had submitted to him.

For that reason, it does not matter that the agreement to arbitrate provides that each side will bear its own costs. Dr. Neev's objection to costs—*after* they had been awarded against rather than for him—comes far too late. Otherwise, a party could always wait and see how an issue submitted to arbitration was decided rather than lodge a timely objection. *Schoenduve*, 442 F.3d at 732.

## III.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN FINDING THAT THERE WAS NO EVIDENCE THAT CREATES A REASONABLE IMPRESSION OF BIAS

As a last resort, Dr. Neev attacks the integrity of the Arbitrator—a retired federal judge who spent 25 years on the bench. But the district court did not abuse its discretion in finding no evidence of evident partiality on the part of the Arbitrator.

"Evident partiality" under the FAA requires specific facts that demonstrate that the arbitrator (1) had actual bias toward or against a party, or (2) failed to disclose to the parties information that creates "a reasonable impression of bias.

*Lagstein*, 607 F.3d at 645-46.  A "reasonable impression of bias" is less stringent for arbitrators than for judges, "because arbitrators will nearly always, of necessity, have numerous contacts within their field of expertise" and often "have many more potential conflicts of interest than judges." *In re Sussex*, 781 F.3d 1065, 1074 (9th Cir. 2015) (internal quotations omitted).  The Ninth Circuit thus has held that an arbitrator "cannot be expected to provide the parties with his complete and unexpurgated business biography." *Id.*  Rather, an arbitrator is "required to disclose only 'facts indicating that he might reasonably be thought biased against one litigant and favorable to another.'" *Lagstein*, 607 F.3d at 646.  Undisclosed facts relating to past, attenuated, or insubstantial connections between a party and an arbitrator do not show a reasonable impression of partiality.  *In re Sussex*, 781 F.3d at 1074 (holding that allegations of bias towards one party are merely speculative where undisclosed facts related to arbitrator's modest efforts to start a company to attract investors for litigation financing); *Lagstein*, 607 F.3d at 646 (finding no reasonable impression of partiality where arbitrator failed to disclose involvement in ethics controversy occurring more than ten years before arbitration).

As the district court correctly found, there is no evidence that the Arbitrator was biased or even appeared that way.  Dr. Neev concedes that he cannot present any evidence of actual bias.  His only evidence of "evident partiality" is based on a

Fish & Richardson webpage that listed the Arbitrator's name, along with dozens of Article III judges, and a vCard.  Neither demonstrates an actual connection between the Arbitrator and Fish & Richardson, which did not represent LenSx in this dispute and has not represented LenSx in any capacity since 2012.  Indeed, LenSx told Dr. Neev's counsel that there was no connection between the Arbitrator (or any of the other judges) and Fish & Richardson before he filed his motion, yet Dr. Neev proceeded anyway.  APX1090.  The district court did not clearly err in finding that Dr. Neev's so-called evidence came nowhere close to creating a "reasonable impression of bias."

### A.    Dr. Neev Failed To Present Any Credible Evidence Of An Actual Connection Between The Arbitrator And Fish & Richardson

The district court found that Dr. Neev's alleged evidence regarding the Arbitrator and Fish & Richardson "fails to establish that there was any relationship requiring disclosure."  APX1335.  That finding is not clearly erroneous.

Dr. Neev's evidence of bias consisted only of a Fish & Richardson website listing the Arbitrator along with dozens of other judges (including members of this Court and a Supreme Court Justice) and a mistakenly generated vCard.  Far from demonstrating an actionable relationship between the Arbitrator and Fish & Richardson, these do not demonstrate even an "attenuated" or "insubstantial" connection.

The law firm website simply identified judges that Fish & Richardson lawyers had appeared before. APX01220-21. It cannot be that the mere appearance before a judge will taint that judge with bias in any future case. Indeed, Dr. Neev's argument would mean that many judges from this Court would also be biased, because they too were listed on the law firm's website. *See* APX1085-86.

Nor does the Fish & Richardson vCard demonstrate any evident partiality. As evidence before the district court showed, these vCards were simply the product of an honest mistake by the law firm's marketing company. APX1220. As the district court found, "[w]ithout more, the fact that F&R listed Judge Rosenbaum on its website with an incomplete vCard suggests, at most, only a trivial connection between them." APX1337.

Unable to show any *actual* relationship, Dr. Neev argues that the award should be vacated because he is "left with the sense that the arbitrator was partial to Alcon," even though "the exact nature of the connection between F&R and these judges is unclear." Neev Br. 51. But the district court did not need to act on that "sense." Instead, the district court was permitted to find that there was no evidence supporting the appearance of partiality. Given the weakness of Dr. Neev's proffer, the district court did not clearly err when it found that "we do not think it is reasonable, even in the absence of any other information, to conclude based on

these webpages that F&R has a relationship with all of the listed judges—including a sitting U.S. Supreme Court Justice."  APX1337.

**B.    Dr. Neev Also Failed To Present Any Evidence Of A Relevant Relationship Between LenSx And Fish & Richardson**

If that were not enough, the district court further found that "the evidence of a connection between Respondent [LenSx] and F&R is weak."  APX1335.

This finding also is not clearly erroneous.  As Dr. Neev has been forced to concede, Fish & Richardson has not represented LenSx in any capacity since February 2012.  APX1223-24; Neev Br. at 49.   Fish & Richardson has not been involved in any matters on behalf of LenSx, including patent prosecution matters, since months before the demand for arbitration in this action was filed. APX01223-24.  In addition, Fish & Richardson is now adverse to LenSx's parent and several of its affiliates in other matters.  APX01223-24.  Based on these facts, the district court found no relationship between Fish & Richardson and LenSx that could give rise to a "reasonable impression" that the Arbitrator was biased in favor of LenSx.

**C.    Even If There Were A Connection Between LenSx, Fish & Richardson, And The Arbitrator, It Fails To Establish A "Reasonable Impression of Bias"**

As the district court correctly found, Dr. Neev did not establish any specific facts demonstrating a relationship between either Fish & Richardson and LenSx or LenSx and the Arbitrator.

Ignoring these findings, Dr. Neev argues that the award should be vacated because he would have struck the Arbitrator if he had he been aware of the Fish & Richardson website materials. But that is not the right inquiry. It does not matter that Dr. Neev might have thought the Arbitrator was biased. What matters is whether the undisclosed materials create a *reasonable* impression of bias. *In re Sussex*, 781 F.3d at 1074.

Nor do the authorities upon which Dr. Neev relies support vacatur. Those cases all had what is missing here—an actual connection between an arbitrator and a party. In *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 147-48 (1968), for example, the Supreme Court noted that there were "close financial relations" between one of the parties and the arbitrator. A defendant had paid the arbitrator about $12,000 in fees as an engineering consultant, and the relationship went so far as to include the rendering of services by the arbitrator on the very construction projects involved in the lawsuit. *Id.* at 148.

Similarly, *New Regency Productions, Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101 (9th Cir. 2007), does not support vacatur. That case involved an arbitration of a contract dispute between a film production company and a film distribution company. The arbitrator failed to disclose that he began working as a senior executive with a company that was negotiating with one of the parties to

48

finance and co-produce an important motion picture, while the arbitration was pending.  *Id*. at 1103.

The non-existent connection between the Arbitrator and the parties here has nothing in common with the clear financial connections present in *Commonwealth Coatings* or *New Regency Productions*.  Unlike those cases, there is no finding that the Arbitrator was involved in any business involving either of the two parties before, during, or after the arbitration.  APX1335-37.  This case is thus a far cry from cases with an undisclosed financial connection between the arbitrators and the parties.

Dr. Neev's unsubstantiated allegations of bias provide no basis to give him what he really wants:  a do-over so he can litigate claim construction, infringement, and costs again.

## CONCLUSION

The judgment should be affirmed.

Respectfully submitted,

Dated:  November 23, 2015

/s/Brian R. Matsui

BRIAN R. MATSUI
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Washington, DC  20006
Telephone:  202.887.8784
BMatsui@mofo.com

ERIC M. ACKER
MARY PRENDERGAST
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, CA  92130
Telephone:  858.720.5100
EAcker@mofo.com

*Counsel for Respondent-Appellee*
*Alcon LenSx, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on November 23, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated:  November 23, 2015                    _____/s/ Brian R. Matsui_____

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Rule 32(a) of the Federal Rules of Appellate Procedure because it contains 11,538 words.


Dated: November 23, 2015                    _____
                                            /s/ Brian R. Matsui

dc-808289